# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

| |
|---|
| ARTEMUS EDEN,<br>　　　　Plaintiff-Appellee,<br><br>v.<br><br>STATION TOWNHOUSES LLC and<br>BOZZUTO MANAGEMENT Co.,<br>　　　　Defendants-Appellants. |

Case No. 25-7133

## PLAINTIFF-APPELLEE'S OPPOSITION TO APPELLANT'S EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION, AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION

Plaintiff-Appellee Artemus Suarez Eden respectfully asks this Court to deny the emergency motion to stay from Defendants-Appellants Station Townhouses LLC and Bozzuto Management Company (collectively, "Bozzuto"). Mr. Eden also asks this Court to summarily adjudicate the appeal, because it has no basis in law or fact.

The district court has found that Bozzuto began by bringing six eviction cases against Mr. Eden in the correct and exclusive forum for their claims against him—the Landlord and Tenant Branch of the D.C. Superior Court. In March of this year, Mr. Eden was arrested, and confined to St. Elizabeth's psychiatric hospital,[1]

---

[1] In passing, Bozzuto's description of Mr. Eden as "a known violent criminal…" (Motion at 1) is at variance with the actual known fact: Mr. Eden was arrested, charged, but not convicted of violent crime. Bozzuto presented the testimony of several eyewitnesses who felt uncomfortable around Mr. Eden's

1

during which time Bozzuto decided to abandon its cases against Mr. Eden, change the locks, and claim that they thought Mr. Eden had abandoned his tenancy. Bozzuto took steps to deliberately conceal this from Mr. Eden—the district court found that "Defendants acted strategically by not notifying Mr. Eden's counsel of the abandonment notice, which Mr. Eden had no prospect of seeing given his confinement." Order at 7.

Mr. Eden filed suit in the District of Columbia Superior Court, and sought emergency relief, on August 29, 2025, the day after he tried to return to his apartment and learned that he was locked out and had become homeless. Bozzuto removed to the district court, which heard testimony from Mr. Eden and all of Bozzuto's witnesses, engaged with and carefully weighed all four preliminary injunction factors, and thoughtfully exercised its broad discretion in crafting an equitable remedy.

Bozzuto's argument to this Court against that remedy is, almost in its entirety, a voluminous recapitulation of their complaints against Mr. Eden. Bozzuto makes little effort to argue against the district court's dispositive findings of fact and conclusions of law. They seek only to relitigate the district court's balancing of equitable factors—mainly, they disagree with how the district court weighed the

---

sometimes eccentric behavior. As to their allegation that Mr. Eden is a violent criminal, Bozzuto relied on little more than hearsay-within-hearsay. Plaintiff has only been convicted of one instance of petty theft. *See, e.g.,* ECF 19 at 1.

balance of harms. And they appear to hope that this Court will review that balancing *de novo* (since they focus on presenting factual allegations concerning Mr. Eden, rather than articulating specific errors in the district court's factfinding or conclusions of law).

This is not a meritorious appellate argument. The actual standard of review for the district court's fact-intensive balancing is abuse of discretion, which Bozzuto cannot show. Bozzuto have already complied with the district court's preliminary injunction order, so that the relief they are requesting now is moot. And assuming for the purpose of argument that anything here had been properly presented for appellate adjudication, this case does not turn on any choice concerning the preliminary injunction standard. This is not the ideal opportunity Bozzuto claims for an extensive analysis about how to read *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Under any reading of *Winter*—or even under the novel ultra-strict super-*Winter* standard Defendants are trying to invent— Bozzuto still must lose. The district court held (and Bozzuto has not cognizably argued against its holding) that Mr. Eden has a substantial likelihood of success on the merits.[2] The district court held that Mr. Eden was

---

[2] Bozzuto tried to argue at the evidentiary hearing that preliminary injunctive relief can only ever be awarded to a party if the Court is "very, very sure… that they will prevail on the merits of the case." Transcript, p. 162:15-16. The district court properly declined to modify the law in this way.

suffering irreparable harm (*per se*, or, in the alternative, based on the district court's findings of fact concerning his circumstances). Bozzuto makes no effort to articulate any reversible error here. Instead, Bozzuto settles for disagreeing with the law based on a smattering of cases from other district courts, and disagreeing with the facts based on, presumably, its own research about the experience of homelessness. The district court properly held that the public interest of the District of Columbia favors "the proper application of the law" (ECF 19 at 10), rather than whatever Bozzuto argued it should favor. And the district court soundly exercised its vast discretion in crafting its equitable remedy. The order, as issued, includes almost all of the terms Bozzuto proposed— some over Mr. Eden's objection—in order to rebalance the harms in Bozzuto's favor. (Accordingly, Bozzuto's claim that they are cognizably irreparably harmed by the injunction they helped draft is, at best, speculative.)

     And, as the district court repeatedly emphasized, without meaningful push-back from Bozzuto, there or here, it is entirely Bozzuto's fault that they have ended up stuck trying to present their litany of grievances against Mr. Eden to the wrong forum. Bozzuto had access to the legislatively designated proper forum—the Landlord and Tenant Branch of the DC Superior Court. They were well on their way to their day in court there as to everything they argue here. They chose to abandon that forum and take their chances with the Medieval remedy of self-help

eviction. And they have no legal or moral claim to what they are now asking this Court to do: cover for them, by comprehensively rewriting District of Columbia law, now that things haven't worked out for them.

## **Argument**

The district court concluded that there was no merit to any of Bozzuto's legal arguments about the likely outcome of this case, because of findings of fact amounting to "overwhelming evidence" in Mr. Eden's favor about the dispositive legal question. They have no likelihood of success here, either. The district court carefully considered, and issued an order to mitigate, the possibility of harm to Bozzuto or third parties. The gravamen of Bozzuto's appeal is their speculation that they might be irreparably harmed anyway.

## **Standard of Review**

This Circuit "review[s] the district court's decision to grant the Plaintiff['s] request for a preliminary injunction for abuse of discretion, its legal conclusions de novo, and its findings of fact for clear error." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 726 (D.C. Cir. 2022).

When there is a "mixed question" of law and fact, but the dispositive questions "immerse courts in case-specific factual issues—compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address… narrow facts… appellate courts should usually review a decision with deference. In

short, the standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Management LLC v. Village at Lakeridge, LLC*, 583 US 387, 396 (2018).

This Court has recently held that "[w]e review any weighing of the preliminary injunction factors for abuse of discretion." *Clevinger v. Advocacy Holdings, Inc.*, 134 F.4th 1230, 1233 (D.C. Cir. 2025).

### **The District Court Properly Found for Mr. Eden on Each Factor.**

The district court heard and weighed live testimony, reviewed relevant D.C. law and a case from the D.C. Court of Appeals ruling in the tenant's favor under similar circumstances to this case, and found for Mr. Eden on each of the four factors.

The determination on each of these factors was, necessarily and explicitly, based on "a raft of case-specific historical facts, consider[ed] as a whole, balance[d] against one another…" *U.S. Bank Nat. Ass'n,* 583 U.S. at 397. As in that case, "[j]ust to describe that inquiry is to indicate where it (primarily) belongs: in the court that has presided over the presentation of evidence, that has heard all the witnesses, and that has both the closest and the deepest understanding of the record." *Id.* at 398. Which is to say that this Court should review the district court's findings as to the preliminary injunction factors for clear error.

6

Bozzuto argues that *Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7 (2008) is "settled law," and that there is reason to doubt whether the classic sliding-scale approach is still good law. It is not clear who they are arguing against. The district court expressly relied on *Winter*, and on a line of subsequent cases in which this Court "has relied on the traditional four [*Winter*] factors as sufficient to evaluate the propriety of injunctive relief." Order at 4. The district court also explained that it was not relying on any sliding scale—instead, its order "evaluates each of the four factors." *Id.*

Bozzuto passes in silence over most of the district court's order. They simply ask this Court (Motion at fn 6) to *ignore* the first two determinations: that Plaintiff is substantially likely to succeed on the merits based on "overwhelming evidence" (Order at 6), and that Mr. Eden was suffering grave irreparable harm because Bozzuto had locked him out of his apartment (Order at 8). Bozzuto's entire case here is founded on sleight of hand: they disagree with the district court's findings on the third and fourth factors, but they describe this as a failure to consider those factors.

Mr. Eden, by contrast, will discuss what the district court actually said.

The district court properly found merit in none of Bozzuto's arguments concerning the merits of this case. Because there is no dispute that self-help eviction is illegal in the District of Columbia, "[t]he only question… is whether

they properly determined that Plaintiff had abandoned the premises. Plaintiff is

substantially likely to prevail on that disputed issue." ECF 19 at 5. The district

court properly found this, because Bozzuto "do[es] not dispute that Mr. Eden's

counsel kept them apprised of Mr. Eden's whereabouts and thus [his] inability to

return to the premises. Further, Defendants acted strategically by not notifying Mr.

Eden's counsel of the abandonment notice, which Mr. Eden had no prospect of

seeing given his confinement. One can reasonably infer that Defendants withheld

such notice from counsel because they knew he would advise them that Mr. Eden

had every intention to return to the residence." ECF 19 at 7.

Bozzuto offers no argument that this is wrong; they merely threaten to argue

against these findings at some future time, in a breezy parenthetical: "…BMC

ostensibly broke the law (which BMC disputes)." Motion at 12.

Against the district court's finding of irreparable harm, Bozzuto argues that

"Of course, the D.C. Court of Appeals is not the arbiter of what counts as

irreparable harm for purposes of a **_federal_** injunction in **_federal_** court." (Motion at

16, emphasis in original). They do not, though, explain why they think the choice-

of-laws analysis in this case ought to land in either the District of New Jersey, the

Western District of Missouri, or the Southern District of California. Nor do they

explain why this Court should "of course" take no notice of the DC Court of

Appeals' interpretation of DC's laws in *Simpson v. Lee,* the case the district court relied on.

It would be surprising if *Simpson* was entirely irrelevant, given that the courts of this circuit have previously approvingly cited it for the same proposition: when weighing the factors for a preliminary injunction, "DC courts have held that a tenant's right to possession of a property is irreparable, given that property 'tends to have unique characteristics.'" *Whole Foods Market Group, Inc. v. Wical Limited Partnership*, 288 F.Supp.3d 176, 190 (D.D.C. 2018) (*citing Simpson v. Lee*, 499 A.2d 889, 896 (D.C. 1985)). This Circuit has not, to Mr. Eden's knowledge, ever wavered from the proposition that "**[i]t is axiomatic** that wrongful eviction constitutes irreparable injury." *Brown v. Artery Organization, Inc.*, 654 F.Supp. 1106, 1118 (D.D.C. 1987) (emphasis added).

But even if this Court rules that in this circuit, wrongful eviction is not *per se* irreparable harm, the district court made findings of fact supporting a particularized determination that Mr. Eden was facing dire consequences in the absence of an injunction, "compounded because Defendants have said they are in the process of re-letting the apartment." Order at 8. The district court also noted that "[a]t present, Mr. Eden has no means of paying rent, as his housing voucher

has been rescinded. He has initiated a process to try and undo that rescission. And the first step in that process is happening within two weeks." Order at 9.[3]

Bozzuto's disagreement with these findings of fact, even though they word their disagreement very emphatically, does not add up to an argument that the district court clearly erred.[4] Instead, Bozzuto relies on its own speculation about possible future events, both to argue that Mr. Eden might not be harmed from being prevented from returning to his home, and that they or somebody else might wind up being irreparably harmed by the preliminary injunction. Motion at 17. Specifically, Bozzuto is arguing that they are subject to certain and great injury because Mr. Eden, in the expert opinion of their counsel, is certain to *violate* the

---

[3] The district court also heard testimony from Ms. Jackson of the DC Housing Authority, who informed the court that even a tenant with an active voucher has to go through a bureaucratic process to obtain approval to transfer that voucher, before they can obtain housing elsewhere: "if the client moves in one apartment and decides to move to another, we do a transfer briefing, and at that time, the same information is given and the client signs a new voucher and a new obligation page." Transcript, p. 77:1-5. This series of steps that would have to happen before Mr. Eden would be in a position to secure stable housing anywhere other than his apartment gave the district court more reason to conclude that an indigent voucher tenant like Mr. Eden is more seriously and more irreparably harmed by wrongful eviction than would be a commercial or residential tenant of greater means, who could go without delay to rent another apartment elsewhere and later seek money damages.

[4] Bozzuto actually comes close to conceding this point. They write that "injury to Eden of a stay pending appeal is debatable…" Motion at 17. They do not explain how any 'debatable' finding could also constitute clear error.

10

terms of the preliminary injunction they are seeking to stay.[5] (They also, presumably, expect this Court to join them in imagining some sequence of events that might leave the district court powerless to enforce its order against Mr. Eden.)

This does not establish what Bozzuto needs it to establish in order to win a stay or an injunction here—which is that "the injury must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Bozzuto then mischaracterizes the district court findings and conclusions that they do deign to address. Bozzuto's claim that "the court held that Eden made a strong showing on the first two elements that swallowed up the other two" (Motion at 11) groans under the strain of twisting away from what the district court actually held, in the course of weighing the other two factors and determining that on the facts of this case, they also resolve in Mr. Eden's favor.

---

[5] To the extent that it is necessary to respond to this speculation, Bozzuto's imaginings about Mr. Eden's future behavior are based on his behavior around the time he was found not competent to stand trial and sent to St. Elizabeth's psychiatric hospital to have his competency restored. He was not released until the criminal justice system determined that his competency had been restored. Also, Mr. Eden testified that he planned to work closely with Pathways to Housing, the agency that provides him with psychiatric care and community support. (Transcript, 40:4-25). Bozzuto did not ask the district court to order Mr. Eden to cooperate and comply with his mental health support and medical care. They instead argue to this Court that they're pretty sure he won't.

The only factor Bozzuto finds worthy of much discussion is their half of the balance of harms. But Bozzuto's claim that the district court simply ignored this factor is not compatible with reality. Instead, the district court said that "[t]he court shares those concerns. Mr. Eden's pattern of erratic, threatening, and harassing behavior—including possible criminal conduct—creates some risk for Defendants, their staff, and residents. But those risks do not carry the day for a number of reasons." ECF 19 at 8. As the district court noted, Mr. Eden was also suffering grave harm. And harm to Bozzuto and third parties was substantially offset by the district court allowing Bozzuto to draft the order, which includes very nearly every term Bozzuto asked for restricting Mr. Eden's behavior, and affords a remedy if those restrictions are breached.[6]

That is, the district court found that the first two factors weigh more or less *absolutely* in Mr. Eden's favor. As to the balance of harms, the district court found

---

[6] At the conclusion of the evidentiary hearing on September 11, 2025, the district court, after explaining why Defendants' legal arguments were unavailing, invited the parties to meet and confer about the terms of a proposed preliminary injunction. Defendants proposed nine restrictions on Plaintiff as conditions for the preliminary injunction. Plaintiff agreed to six, quibbled with two, and objected to one. The district court held a colloquy the following day, accommodated one of Plaintiff's quibbles by adding a small carve-out to one of Defendants' proposed restrictions—instead of being banned from all common areas of the building, Plaintiff is allowed to use the building's publicly available computers to access the internet for a few hours a day (since Plaintiff's computer has been taken and thrown away by Defendants). The district court overruled Plaintiff on the other points, and entered an order accordingly.

that Mr. Eden was suffering great harm, but Bozzuto had some weight of cognizable concerns on their side of the scales. So the district court took pains to rebalance the scales in Bozzuto's favor. Having done this, the district court concluded that Bozzuto's remaining "risks do not carry the day." Order at 8. Bozzuto's speculations to the contrary do not amount to an argument that the district court has in any way abused its discretion.

Bozzuto once again pretermits any discussion of the district court's actual conclusions about the public interest—that "Defendants should not be able to secure the relief they seek through equitable considerations instead of the statutorily mandated processes, which they abandoned. Relatedly, the public has an interest in seeing any ejectment of Mr. Eden done through the Landlord Tenant Branch, as required by statute." ECF 19 at 9. Bozzuto merely tries to hotwire the public interest back into the only factor they want to consider: their half of the balance of harms.

Mr. Eden respectfully contends that ignoring the district court's weighing of the public interest does nothing to show that this weighing was done erroneously.

Mr. Eden would prevail under any imaginable interpretation of the preliminary injunction test. The district court heard from both sides, weighed testimony, exercised its broad discretion by carefully crafting a remedy (including by giving Bozzuto what it asked for, to offset any foreseeable harm to them or third

13

parties), and then found that *each* of the four factors weighed in favor of granting Mr. Eden injunctive relief.

Bozzuto's argument to this Court boils down to something like "the rule on preliminary injunctions in the D.C. Circuit is that if the defendant, in its sole and unreviewable discretion, determines that an injunction might cause some harm, it is reversible error to issue an injunction." Mr. Eden respectfully contends that this is not one of the plausible interpretations of the standard here.

### **Defendants Seek No Relief Still Available; This Appeal is Moot.**

The only relief Defendants seek in their Motion is "an immediate stay of the preliminary injunction Order entered by the district court on September 12, 2025." Motion at 1. As Defendants note, "[t]he district court's Order, which is premised on an alleged wrongful eviction… requires BMC to turn over the keys to Unit 943 ***by noon on Monday, September 15, 2025.***" *Id.* at 2 (emphasis in original).

That has happened. Mr. Eden was restored to possession of his home, on schedule. *See* Affidavit of Adam Marshall, attached hereto. This appeal seeks only to prevent an event which has already taken place. "The orders under review require nothing more of them" other than that Defendants refrain from once again breaking the law by conducting a self-help eviction, and "an appeal from an order granting a preliminary injunction becomes moot when, because of the defendant's compliance or some other change in circumstances, nothing remains to be enjoined

14

through a permanent injunction." *Spirit of the Sage Council v. Norton*, 411 F.3d 225, 229 (D.C. Cir. 2005).

Unless Bozzuto is threatening to conduct a second self-help eviction in as many months, there is nothing that they could gain by the relief they are seeking—which is a court order staying the injunction, so that they no longer have to give Mr. Eden the key to his apartment yesterday. Now that Mr. Eden is housed again, all of the forward-looking provisions of the preliminary injunction are restrictions on Mr. Eden. These provisions were written by Bozzuto for their own benefit. If Bozzuto now thinks that it is suffering harm from those provisions, they haven't said so.

None of the relief they actually seek here can be granted to them anymore. [7] So, this case is moot.

## **Conclusion**

At the end of their motion, Defendants let the mask slip as to the thinking underlying their entire course of conduct. They opine that under no circumstances could they *ever* be enjoined to undo their violation of DC law governing Plaintiff's

---

[7] Bozzuto would presumably blush at conducting a second illegal self-help eviction, now that they have solicited the attention of something approaching all of the judges physically present in the District of Columbia. And Bozzuto have not asked this Court to decide whether it has the power to issue a writ of restitution directing the US Marshals to carry out an eviction.

rights. They think the *only* ruling as to a remedy that they could possibly be expected to obey is "money damages" following a jury trial. (Motion at 20).

All of Bozzuto's tenants should recoil in horror and start renting storage units. Their landlord has announced that it has decided that it is their *feudal* lord— free to lock them out at its pleasure, chant the magic word 'abandonment,' throw away all their belongings, and then keep a wary eye on them from its castle keep.

By claiming immunity from preliminary equitable relief, Bozzuto is, practically speaking, asking this Court to rewrite the District of Columbia's tenants' rights laws. Bozzuto knows that they're much richer than any of their tenants are. And it follows that in Bozzuto's view, Mr. Eden, their lawful tenant, has no rights they are bound to respect. As long as Bozzuto is prepared to pay the small minority of dispossessed tenants that are able to sustain the wherewithal and tenacity to pursue litigation back and forth from the superior court to the district court to this Court, Bozzuto can carry out as many self-help evictions as they like.

But Bozzuto's tenants' rights against self-help eviction "ought not to be, as they might be, defeated, by short term [actions], capable of repetition, yet evading review…. [as tenants] have their rights determined by [Bozzuto] without a chance of redress." *Southern Pac. Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515 (1911).

It is no wonder that Bozzuto is uninterested in discussing most of the district court's conclusions concerning DC law. Bozzuto no longer thinks they have anything to fear from DC's statutes, now that they've slipped the surly bonds of DC's courts to this (as they render it) *federal* court.

So far, though, Defendants have been disappointed that the district court did not grant them access to the special secret *federal* landlord-tenant laws they've been imagining. Deciding to take another crack at it, they have resolved to try their luck making the same wrong arguments here. After all, what could it hurt—since, in whatever unspecified jurisdiction Defendants think they have escaped to, keeping someone homeless does not as a matter of law cause them any irreparable harm.

Rather than granting a full briefing schedule to Defendants' fever dreams about a world in which all preliminary injunctions are illegal, homelessness is harmless, and anybody troubled by inconvenient state laws can remove the case to Federal court in order to evade any inquiry into likelihood of success on the merits of state law claims, Plaintiff respectfully asks this Court to not waste any more of its time than is necessary to summarily adjudicate this meritless appeal.

Respectfully submitted,


/s/ Philana Weiss
Philana Weiss, #1044152
RWeiss@NLSP.org, 202-849-8285

Neil Colin Satterlund, #1531473
NSatterlund@NLSP.org, (202)849-3609
Neighborhood Legal Services Program
64 New York Ave. NE, Suite 180
Washington, DC 20002
*Counsel for Plaintiff-Appellee*

18

### CERTIFICATE OF COMPLAINCE

1. This motion contains 4,198 words, excluding the parts of the motion exempted by Fed. R. App. P. 27(a)(2)(B).  This motion therefore complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A).

2. This motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.  this motion therefore complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as those rules are made applicable to motions through Fed. R. App. P. 27(d)(1)(E).

_\_\_/s/ Philana Weiss\_\_\_\__
Philana Weiss

### CERTIFICATE OF SERVICE

I certify that on September 16, 2025, the foregoing Opposition Motion, was served by e-service on Defendants-Appellants counsel and a courtesy copy was also emailed to Defendants-Appellants counsel.

_\_\_/s/Philana Weiss\_\_\_\__
Philana Weiss

# UNITED STATES COURT OF APPEALS
## For the District of Columbia Circuit

| | |
|---|---|
| Artemus Eden, ) | |
| ) | |
| Appellee, ) | **Circuit Court** |
| ) | **Case No. 25-7133** |
| v. ) | |
| ) | **District Court** |
| Station Townhouses LLC and Bozzuto ) | **Case No. 1:25-cv-02944-APM** |
| Management Company, ) | |
| ) | |
| Appellants. ) | |

## AFFIDAVIT OF ADAM MARSHALL

1. My name is Adam Marshall, and I am the Managing Attorney of the Housing Practice at Neighborhood Legal Services Program.

2. On September 15, 2025, I was present at Station House, 701 2nd St. NE, Washington, DC 20002 to witness the keycard handoff ordered by District Court Judge Amit Mehta in the above-captioned matter.

3. Shortly after 12:00 p.m. on September 15, 2025, I entered the main entrance of Station House along with the Appellee, Artemus Eden, and Rachel Weiss, who is co-counsel for Mr. Eden.

4. Mr. Eden identified himself to the concierge at the front desk. The concierge asked if Ms. Weiss and I were attorneys, and I responded that we were attorneys with the firm representing Mr. Eden and as such could not speak further with Station House staff directly.

5. The concierge made a call using the phone at the front desk, and shortly thereafter another staff member arrived in the lobby with a sheet of paper and keycard.

6. This staff member with the sheet of paper and keycard informed Mr. Eden that she had his keycard and that he would need to sign the paper acknowledging receipt of the keycard.

7. Mr. Eden signed the paper acknowledging receipt of the keycard, and the staff member handed him the keycard.

8. I then followed Mr. Eden, Ms. Weiss, and Mr. Eden's case worker from Pathways to Housing, Ms. Green, to Unit 943 of 701 2nd St. NE, Washington, DC 20002, where I observed Mr. Eden enter the unit and take possession.

I declare under penalty of perjury that the forgoing declaration is true and accurate to the best of my knowledge, information, and belief.

Dated: September 15, 2025

Adam Marshall, Esq. (DC Bar #1034651)
Managing Attorney, Housing Unit
Neighborhood Legal Services Program
64 New York Ave NE, Suite 180
Washington, DC 20002
Email: amarshall@nlsp.org
Phone: (202) 269-5121

Subscribed and sworn to before me on this 15th day of September, 20 25

Notary Public/Deputy Clerk

January 14th, 2030
My commission expires

RONALD FRANCIS GARVEY IV
NOTARY PUBLIC
MY COMMISSION EXPIRES
1/14/2030
DISTRICT OF COLUMBIA

3